DAVID B. BARLOW, United States Attorney (#13117)
MICHAEL J. ROMANO, Special Assistant United States Attorney
DENNIS R. KIHM, Trial Attorney, Department of Justice Tax Division
Attorneys for the United States of America
185 South State Street, #300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

FILED
U.S. DISTRICT COURT

2013 JAN 23 ᴅ 12:00

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| Plaintiff, | : INDICTMENT |
| vs. | : VIO. |
| GERRIT TIMMERMAN III, and CAROL JEAN SING, | : 18 U.S.C. § 371 – Conspiracy to Defraud the United States |
| Defendants. | : |

---

THE GRAND JURY CHARGES THAT, at times relevant to this indictment:

### COUNT ONE
(18 U.S.C. § 371 – Conspiracy to Defraud the United States)

1.   From on or about April 23, 2004, and continuing thereafter up to and including at least March 5, 2007, in the District of Utah and elsewhere, defendants

**GERRIT TIMMERMAN III**

and

**CAROL JEAN SING,**

did unlawfully, voluntarily, intentionally, and knowingly conspire, combine, confederate, and agree together and with each other and with other individuals both known and unknown to the Grand Jury to defraud the United States for the purpose of impeding, impairing, obstructing, and

**INDICTMENT - 1**

Case: 2:13-cr-00045
Assigned To : Campbell, Tena
Assign. Date : 01/23/2013
Description: USA v.

defeating the lawful Government functions of the Internal Revenue Service of the Treasury Department in the ascertainment, computation, assessment, and collection of revenue: to wit, income taxes.

## PERSONS, PARTIES, AND ENTITIES

2. GERRIT TIMMERMAN III ("TIMMERMAN") resided in Salt Lake City, Utah, or Midvale, Utah.

3. CAROL JEAN SING ("SING") resided in Henderson, Nevada.

4. The Internal Revenue Service ("IRS") was and is an agency of the United States.

5. A "corporation sole" was a method of incorporation authorized under the laws of certain states, including Nevada.

6. Trioid International Group, Incorporated ("Trioid") was a corporation operated by SING, and others known and unknown to the grand jury, and located in Henderson, Nevada. SING used Trioid to, among other things, act as a resident agent for her clients' corporations sole.

7. Law Research & Writing was a name used by TIMMERMAN to, among other things, market corporations sole.

8. S.B., C.H., G.L., H.L., V.F., and K.S. were clients of TIMMERMAN and SING and are identified herein by their initials.

9. Undercover Agents 1 and 2 ("UC1" and "UC2") were IRS agents posing as prospective clients interested in purchasing a corporation sole from Trioid, TIMMERMAN, and SING.

10. "The Office of the First Presiding Patriarch (Overseer) and his/her successors, a corporation sole over/for an unincorporated scriptural society, in the nature of Ecclesia, over/for

INDICTMENT - 2

The Popular Assembly of Astrum Regis" (hereinafter "Astrum Regis") was a corporation sole created on behalf of TIMMERMAN.

11. "The Office of the First Presiding Patriarch (Overseer) and his/her successors, a corporation sole over/for an unincorporated religious scriptural society in the nature of Ecclesia, over/for The Popular Assembly of The Foundation of Love and Light (AKA: The Foundation of Love and Light)" was a corporation sole created on behalf of S.B.

12. "The Office of the First Presiding Patriarch (Overseer) and his/her successors, a corporation sole over/for an unincorporated religious scriptural society, in the nature of Ecclesia, over/for The Popular Assembly of Helping Hearts Foundation (AKA. Helping Hearts Foundation)" was a corporation sole created on behalf of C.H.

13. "The Office of the First Presiding Patriarch (Overseer) and his/her successors, a corporation sole over/for an unincorporated religious scriptural society, in the nature of Ecclesia, over/for The Popular Assembly of The Highest Potential Ministry (A.K.A.: The Highest Potential Ministry" was a corporation sole created on behalf of G.L.

14. "The Overseer of W.T.L., and his successors, a corporation sole (AKA: W.T.L.)" was a corporation sole created on behalf of H.L.

15. "The Office of the First Presiding Patriarch (Overseer) and his/her successors, a corporation sole over/for an unincorporated religious scriptural society, in the nature of Ecclesia, over/for The Popular Assembly of Shared Enlightenment Ministry (A.K.A. Shared Enlightenment Ministry)" was a corporation sole created on behalf of V.F.

16. "The Office of the First Presiding Patriarch (Overseer) and his/her successors, a corporation sole over/for an unincorporated religious scriptural society, in the nature of Ecclesia,

INDICTMENT - 3

over/for The Popular Assembly of the Sanctuary for Widows in Christ (A.K.A: Sanctuary for Widows in Christ)" was a corporation sole created on behalf of K.S.

## MANNER AND MEANS BY WHICH THE CONSPIRACY WAS CARRIED OUT

The manner and means by which this conspiracy was sought to be accomplished included, among others, the following:

17.     TIMMERMAN and SING promoted a scheme to evade the assessment and payment of federal income taxes through the use of corporations sole.

18.     TIMMERMAN solicited many clients for the scheme among individuals who TIMMERMAN knew to have histories of failure to file federal income tax returns or to pay federal income taxes. TIMMERMAN also knew that the IRS had assessed outstanding tax liabilities against, and had attempted to collect unpaid taxes from, many of his clients and potential clients.

19.     To promote their scheme, TIMMERMAN and SING falsely told clients and potential clients that corporations sole were exempt from the United States' income tax laws, had no requirement to file a tax return, and had no obligation to apply for tax-exempt status with the federal government. TIMMERMAN and SING further claimed that that individuals could assign their income to a corporation sole while maintaining control over such income and that any income assigned to a corporation sole either would not be taxable or would be tax-deductible.

20.     TIMMERMAN and SING falsely told clients that they could render property immune from IRS collection activity by transferring the property to a corporation sole.

21.     TIMMERMAN and SING further told clients and prospective clients that establishing a corporation sole in Nevada would restrict IRS access to client records.

INDICTMENT - 4

22. SING told clients and prospective clients that they could draw a stipend of $6,000 per month, without tax consequences, from their corporation sole.

23. SING maintained a website, located at www.trioid.com, which she used to promote the supposed benefits of corporations sole. Content within certain portions of the website was drafted by TIMMERMAN, and the website referred individuals to Law Research & Writing for the creation of a corporation sole.

24. TIMMERMAN and SING advised clients and potential clients to open a bank account in Nevada, using the name of their corporation sole, and to manage the bank account through a branch local to the client.

25. For a fee, TIMMERMAN and SING assisted clients with the creation of corporations sole.

26. For an additional fee, SING agreed to file clients' corporation sole paperwork with Nevada; to act as resident agent, or to have Trioid act as resident agent, for clients' corporations sole; and to open a bank account in the name of clients' corporations sole.

27. For an additional annual fee, SING agreed to renew her or Trioid's services as resident agent for clients' corporations sole. As part of this renewal, SING notified clients when they needed to file annual paperwork for their corporations sole with Nevada and typically filed such paperwork.

28. TIMMERMAN and SING caused the incorporation of at least 90 corporations sole. Clients had outstanding federal income tax assessments totaling at least $5,000,000 at the time their corporations sole were created.

INDICTMENT - 5

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, overt acts were committed in the District of Utah and elsewhere, including but not limited to the following:

29. On or about April 23, 2004, SING caused the filing of Articles of Incorporation for TIMMERMAN's corporation sole, Astrum Regis.

### ACTS RELATED TO CLIENT S.B.

30. On or about April 26, 2004, TIMMERMAN and SING caused the filing of Articles of Incorporation for S.B.'s corporation sole, The Foundation of Love and Light.

31. On or about March 31, 2005, SING, through Trioid, received a payment in the amount of $150 for the renewal of S.B.'s corporation sole, The Foundation of Love and Light, and for Trioid's resident agent fee.

### ACTS RELATED TO CLIENT C.H.

32. On or about July 23, 2004, after TIMMERMAN received correspondence from C.H. regarding C.H.'s tax debts, TIMMERMAN and SING caused the filing of Articles of Incorporation for C.H.'s corporation sole, Helping Hearts Foundation.

33. On or about June 13, 2005, SING, through Trioid, received a check in the amount of $150 for the renewal of C.H.'s corporation sole, Helping Hearts Foundation, and for Trioid's resident agent fee.

34. On or about May 30, 2006, SING, through Trioid, received two checks, totaling $150, for the renewal of C.H.'s corporation sole, Helping Hearts Foundation, and for Trioid's resident agent fee.

ACTS RELATED TO CLIENT G.L.

35. On or about December 1, 2004, after TIMMERMAN received correspondence from G.L. regarding G.L.'s tax debts, Law Research & Writing contracted with G.L. for the creation of a corporation sole.

36. On or about December 2, 2004, SING caused Trioid to pay $300 to the Nevada Secretary of State related to the creation of a corporation sole on behalf of G.L.

37. On or about December 3, 2004, TIMMERMAN and SING caused the filing of Articles of Incorporation for G.L.'s corporation sole, The Highest Potential Ministry.

38. On or about December 6, 2004, SING caused Trioid to pay $1,350 to TIMMERMAN for creating G.L.'s corporation sole, The Highest Potential Ministry.

39. On or about July 3, 2006, SING caused Trioid to pay $275 to the Nevada Secretary of State for the renewal of G.L.'s corporation sole, The Highest Potential Ministry, and for other services.

40. On or about February 16, 2007, SING caused Trioid to pay $200 to the Nevada Secretary of State for the renewal of G.L.'s corporation sole, The Highest Potential Ministry.

41. On or about February 16, 2007, SING, through Trioid, received payment from G.L. in the amount of $200 to reimburse SING for the cost of renewing G.L.'s corporation sole, The Highest Potential Ministry.

42. On or about February 17, 2007, SING, through Trioid, received payment from G.L. in the amount of $125 for Trioid's resident agent fee.

ACTS RELATED TO CLIENT H.L.

43.     On or about November 13, 2005, SING, through Trioid, received a credit card payment in the amount of $4,850 for the creation of a corporation sole on behalf of H.L. and for other services.

44.     On or about December 6, 2005, SING, through Trioid, received from H.L. an application for a corporation sole, W.T.L.

45.     On or about December 8, 2005, TIMMERMAN and SING caused the filing of Articles of Incorporation for H.L.'s corporation sole, W.T.L.

ACTS RELATED TO CLIENT V.F.

46.     On or about January 15, 2006, TIMMERMAN emailed V.F. to provide information about the creation of a corporation sole on behalf of V.F. and the creation of one or more bank accounts connected to that corporation sole.

47.     On or about January 16, 2006, TIMMERMAN, through Law Research & Writing, received an application for a corporation sole on behalf of V.F.

48.     On or about January 21, 2006, TIMMERMAN, through Law Research & Writing, received an additional application for a corporation sole on behalf of V.F.

49.     On or about February 3, 2006, TIMMERMAN received payment in the amount of $1,875 from V.F, of which $1,325 was for the creation of V.F.'s corporation sole and $550 was for Trioid's resident agent fee and other fees.

50.     On or about February 9, 2006, TIMMERMAN and SING caused the filing of Articles of Incorporation for V.F.'s corporation sole, Shared Enlightenment Ministry.

INDICTMENT - 8

51. On or about January 5, 2007, SING, through Trioid, received payment in the amount of $150 for the renewal of V.F.'s corporation sole, Shared Enlightenment Ministry, and for Trioid's resident agent fee.

ACTS RELATED TO CLIENT K.S.

52. On or about November 4, 2005, TIMMERMAN emailed K.S. information about corporations sole.

53. On or about November 9, 2005, TIMMERMAN emailed K.S. additional information about corporations sole.

54. On or about December 29, 2005, TIMMERMAN emailed K.S. regarding the name and mission statement for her corporation sole.

55. On or about May 22, 2006, TIMMERMAN emailed K.S. with an updated mission statement for K.S.'s corporation sole.

56. On or about May 23, 2006, TIMMERMAN emailed K.S. to confirm receipt of her payment of $1,975 for establishing a corporation sole and for related services.

57. On or about May 31, 2006, SING caused Trioid to pay Nevada $300 for the incorporation of K.S.'s corporation sole, Sanctuary for Widows in Christ, and for related services.

58. On or about June 13, 2006, TIMMERMAN and SING caused the filing of Articles of Incorporation for K.S.'s corporation sole, Sanctuary for Widows in Christ.

59. On or about August 25, 2006, TIMMERMAN sent K.S. an email with an attachment regarding a purported vow of poverty that K.S. could take as the head of a corporation sole.

INDICTMENT - 9

ACTS RELATED TO UC1

60. On or about June 21, 2006 TIMMERMAN spoke with UC1 by telephone, during which conversation TIMMERMAN told UC1 that UC1 or his business could make donations to UC1's corporation sole which would not be taxable, that UC1's corporation sole would have no liability to pay any income tax, and that SING would act as resident agent for UC1's corporation sole.

61. On or about June 21, 2006, TIMMERMAN sent an email to UC1 in which he referred UC1 to SING and provided attached documents regarding corporations sole.

62. On or about June 30, 2006, TIMMERMAN spoke with UC1 by telephone, during which conversation TIMMERMAN further explained the purported benefits of corporations sole and referred UC1 to SING in order to have a corporation sole incorporated.

63. On or about July 5, 2006, SING spoke with UC1 by telephone, during which SING explained the purported benefits of corporations sole and discussed the cost of creating a corporation sole for UC1.

64. On or about July 7, 2006, TIMMERMAN sent an email to UC1 with attached documents that would assist UC1 with opening a bank account in the name of his corporation sole.

65. On or about August 10, 2006, SING caused Trioid to advertise, on its website, that it charged a fee of $3,550 for a corporation sole package and $125 for annual renewal of its resident agent status. Trioid's website further advertised similar prices for corporations sole created with the assistance of Law Research & Writing.

INDICTMENT - 10

66. On or about August 29, 2006, SING met with UC1 at SING's residence in Henderson, Nevada, during which conversation SING assisted UC1 in filing for a corporation sole in Nevada.

67. On or about August 29, 2006, TIMMERMAN and SING caused the filing of Articles of Incorporation for UC1's corporation sole.

68. On or about August 29, 2006, SING caused Trioid to charge UC1's credit card in the amount of $850, which was a partial payment for the creation of a corporation sole and for related services.

69. On or about August 29, 2006, SING, through Trioid, received a payment from UC1 in the amount of $4,000, which was partial payment for the creation of a corporation sole and for related services.

70. On or about January 24, 2007, SING met in person with UC1, UC2, and several other IRS undercover agents, during which meeting SING attempted to sell corporations sole and related services to these agents.

ACTS RELATED TO UC2

71. On or about January 25, 2007, TIMMERMAN and SING caused the filing of Articles of Incorporation for UC2's corporation sole.

72. On or about January 25, 2007, SING, through Trioid, received a payment from UC2 in the amount of $2,400, which was a partial payment for the creation of a corporation sole and for related services.

73. On or about January 25, 2007, SING left two voicemail messages for UC2. In the first, SING requested additional money in order to complete UC2's corporation sole. In the second, SING provided contact information for TIMMERMAN.

74. On or about January 28, 2007, TIMMERMAN sent an email to UC2 regarding a mission statement for UC2's corporation sole.

75. On or about January 29, 2007, SING spoke with UC2 by telephone, during which conversation SING took UC2's credit card information for an additional payment and discussed the opening of a bank account for UC2's corporation sole.

76. On or about January 29, 2007, SING caused Trioid to charge UC2's credit card in the amount of $2,450, which was a partial payment for the creation of UC2's corporation sole and for related services.

77. On or about January 30, 2007, TIMMERMAN sent an email to UC2 that provided UC2 with an application for a corporation sole.

78. On or about February 1, 2007, TIMMERMAN sent an email to UC2 that discussed the appointment of a secretary and successor for UC2's corporation sole.

79. On or about February 1, 2007, SING sent an email to UC2 that notified UC2 that his corporation sole was completed.

80. On or about March 2, 2007, SING, through Trioid, charged UC2's credit card for $25, which was a reimbursement to Trioid for the cost of filing paperwork related to UC2's corporation sole with Nevada.

//
//
//
//
//
//

INDICTMENT - 12

81.     On or about March 5, 2007, SING contacted UC2 by telephone regarding the charges to UC2's credit card, including the charge described in paragraph 80.

All in violation of Title 18, United States Code, section 371.

A TRUE BILL:

/S/
_____
FOREPERSON OF THE GRAND JURY

DAVID B. BARLOW
United States Attorney

*[signature]*
MICHAEL J. ROMANO
Special Assistant United States Attorney

*[signature]*
DENNIS R. KIHM
Trial Attorney
Department of Justice, Tax Division